UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

KEITH KELLY,                      )
A/K/A ABDUL ISLAM,                )
                                  )
        Petitioner,               )
                                  )
    v.                            )        No. 4:13 CV 1231 JMB
                                  )
JAY CASSADAY,                     )
                                  )
        Respondent.               )

## MEMORANDUM AND ORDER

Keith Kelly, a/k/a Abdul Islam (hereinafter "Kelly")[1] brings this *pro se* action, seeking a

Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. All matters are pending before the

undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. §

636(c). The Court concludes that the matter may be resolved on the existing record. The Court

further concludes that the Petition should be denied and that no certificate of appealability should

be issued.

## INTRODUCTION AND PROCEDURAL HISTORY

I.    **Factual Background**[2]

    A.    **Charges and Conviction**

On March 16, 2010, a jury in the City of St. Louis, Missouri, convicted Kelly on charges

of stealing over $500.00 and second-degree property damage. Kelly had approximately seven

---

[1] The parties agree that Keith Kelly changed his name to Abdul Islam prior to the charges and conviction underlying this matter. Because most of the relevant court records refer to Petitioner by his former name, the Court will refer to him as "Kelly" herein.

[2] The factual background is taken primarily from the Missouri Court of Appeals decision affirming Kelly's conviction and sentence, and the Missouri Court of Appeals decision affirming the denial of post-conviction relief. (See Resp. Exhs. E and I)

prior felony convictions. As such, the trial court sentenced Kelly as a persistent offender to thirteen years of imprisonment on the stealing conviction, and six months of imprisonment, with credit for time served, on the property damage charge. (See Resp. Exh. A at 76, Resp. Exh. B at 65-68)

Both of Kelly's convictions stemmed from a single incident. In early 2009, Kelly worked as a dishwasher at the Scottish Arms, a restaurant in St. Louis, Missouri. On February 25, 2009, a customer, who parked behind the restaurant, discovered that his car had been broken into and a laptop and iPod were missing. The customer reported the incident to Nicholas Birlew, the restaurant's manager, who contacted the police. The break in was captured on the restaurant's video surveillance system.

St. Louis Police Officer Durand Brassfield responded to the restaurant on February 25, 2009, and reviewed surveillance video of the incident with Mr. Birlew. "At trial, Mr. Birlew testified that the video showed a person come from inside a gate connected to the back of the restaurant, approach [the victim's] car, take something from the car, and walk to the other end of the parking lot where the dumpsters were located. Mr. Birlew identified the person in the video as [Kelly]." (Resp. Exh. E at 10)

Zach Flynn was a cook at the restaurant in February 2009, and was working with Kelly on February 25, 2009. After work on February 25, 2009, Mr. Flynn purchased the laptop and iPod from Kelly for $200.00. On February 26, 2009, after learning about the break-in, Mr. Flynn reported to Mr. Birlew that he had the stolen laptop and iPod. Mr. Birlew again contacted the police. This time St. Louis Police Officer William Weier responded to the restaurant. Mr. Birlew indicated to Officer Weier that he had previously identified Kelly from the surveillance

video.  Officer Weier arrested Kelly, who was eventually charged with stealing over $500.00 and second-degree property damage.  (Resp. Exh. B at 12-19)

Both Mr. Birlew and Mr. Flynn testified that they watched the surveillance video and observed Kelly reach into and remove something from the victim's car.  (See Resp. Exh. A at 51, 58)  Officer Weier testified that he watched the video and "that [Kelly] 'fit the description that [he] saw in the video'" and that Officer Weier "based his identification of [Kelly] on his 'build and complexion.'"  (Resp. Exh. E at 11)

Kelly's pre-trial attorney made a timely request for discovery.  (See Resp. Exh. A at 75; Resp. Exh. B at 6)  Unfortunately, prior to trial, the third-party security firm that operated the surveillance equipment at the restaurant recorded over the events of February 25, 2009.  The record in this matter indicates that the police made several requests for a copy of the surveillance video, and that Mr. Birlew did not know how to make a copy of the video from the surveillance equipment at the restaurant.  (See Resp. Exh. A at 52, 53; Resp. Exh. C at 20)  There is no evidence that any party acted in bad faith regarding the loss of the video evidence.

Prior to trial, Kelly's lawyer filed an unsuccessful attempt to dismiss the charges based on the "intentional destruction of exculpatory evidence."  (Resp. Exh. E at 11)  Defense counsel also moved unsuccessfully to exclude any witness testimony regarding the contents of the surveillance video.  (See also Resp. Exh. B at 25-27)

At the beginning of jury selection, Kelly was reportedly shackled without his attorney's knowledge.  The record indicates that Kelly's circumstance would have been visible to some of the venire members who were seated behind Kelly.  Kelly's restraints were removed before jury selection was completed.  Although Kelly's attorney became aware of the situation, he did not seek to quash the panel or request any other relief from the trial court.

During the trial, Kelly's attorney attempted to impeach Mr. Flynn with a statement in his pre-trial deposition that he had a conviction for "breaking and entering." "The trial court sustained the State's motion in limine to prevent defense counsel from asking Mr. Flynn at trial about the 'breaking and entering conviction.' During cross-examination, defense counsel asked Mr. Flynn whether he had any prior convictions, and Mr. Flynn responded that he had a conviction for 'minor [in] possession of alcohol.' Thereafter, Defense counsel renewed his request to impeach Mr. Flynn by asking about the breaking and entering conviction, which the trial court denied." (Resp. Exh. E at 11-12) In arguing its motion in limine, the State informed the trial court that, despite repeated searches, could find no record of any conviction for Mr. Flynn. Moreover, there was no such crime as "breaking and entering." (Resp. Exh. A at 44-45; Resp. Exh. F at 21)[3]

The jury found Kelly guilty of both charges. The trial court sentenced Kelly as a persistent offender to thirteen years of imprisonment on the stealing charge, and six months of imprisonment, with credit for time served, on the property damage charge.

**B.** **Direct Appeal**

Kelly appealed his conviction to the Missouri Court of Appeals, raising two points of error. (Resp. Exh. C at 2) Kelly first argued that the trial court erred in denying his motion to dismiss the case against him due to the loss of the allegedly exculpatory video surveillance evidence. As part of his first point, Kelly also argued that the trial court abused its discretion in allowing the State's witnesses to testify regarding the surveillance video because it violated the best evidence rule. Kelly's second argument was that the trial court erred when it limited his

---

[3] In his deposition, Mr. Flynn testified that, during spring break, he was drunk and walked into someone else's house in Camdenton, Missouri and was *charged* with "breaking and entering." (Resp. Exh. F at 21) This testimony is not necessarily inconsistent with his trial testimony that he had a *conviction* for being a minor in possession. (Resp. Exh. A at 60)

attempts to impeach Mr. Flynn with his statement that he had a prior conviction for "breaking and entering." The Missouri Court of Appeals rejected each of these arguments. (Resp. Exh. E) Relevant aspects of the Missouri Court of Appeals' decision will be discussed in greater detail below.

## II.     State Post-Conviction Proceedings Under Rule 29.15

Following his unsuccessful direct appeal, Kelly filed a *pro se* motion for post-conviction relief, pursuant to Missouri Rule 29.15, raising a variety of claims. (Resp. Exh. F at 5-15) The motion court appointed counsel to assist Kelly. Appointed counsel filed an amended Rule 29.15 motion. (Resp. Exh. F at 33-64) Kelly's amended Rule 29.15 motion included all of the grounds raised in his earlier *pro se* motion, as well as several additional grounds. As relevant to the grounds presented in this federal habeas matter, Kelly raised the following allegations ineffective assistance of counsel and prosecutorial misconduct: (1) failure to impeach Mr. Flynn regarding his prior deposition testimony that he would not be charged if he cooperated with the State (id. at 37); (2) failure to secure witnesses to prove Mr. Flynn's prior criminal conviction for burglary to use in impeaching Mr. Flynn (id.); (3) failure to request the venire panel be quashed because Kelly was handcuffed and shackled during the first half of jury selection (id. at 50); (4) failure of pretrial counsel to subpoena the restaurant security surveillance video before it was destroyed (id. at 10); and (5) prosecutorial misconduct by having trial witnesses testify to the contents of the surveillance video (id. at 12).

The motion court denied Kelly's Rule 29.15 motion without a hearing. (Resp. Exh. F at 69-70) Kelly appealed the denial of his Rule 29.15 motion to the Missouri Court of Appeals. As relevant herein, Kelly raised three points of alleged error on appeal. First, Kelly argued that the motion court erred in denying his claim that his trial counsel was ineffective in failing to quash

the venire panel after learning that Kelly had been shackled during an initial portion of voir dire. Kelly argued that he had shown a reasonable probability that a different venire panel would have had doubts as to his guilt, particularly because the evidence against Kelly allegedly hinged on the testimony of Mr. Flynn. Second, Kelly argued that the motion court erred in denying his claim that trial counsel was ineffective in failing to impeach Mr. Flynn's testimony that he had not entered into a cooperation deal with the State.[4] Third, Kelly argued that the motion court erred in denying his claim that his pretrial counsel was ineffective in failing to obtain the surveillance video prior to its loss.

On April 16, 2013, the Missouri Court of Appeals affirmed the motion court's decision in a summary order accompanied by a more detailed supplemental memorandum. (Resp. Exh. I) Accordingly, the Missouri Court of Appeals affirmed the denial of Kelly's rule 29.15 motion without a hearing.

## ISSUES RAISED IN KELLY'S § 2254 PETITION

On June 17, 2013, Kelly mailed the instant petition under 28 U.S.C. § 2254. The petition was docketed and filed in this Court on June 21, 2013. Kelly raises four grounds for relief.

First, Kelly argues that his trial counsel was ineffective by failing to move to quash the venire panel after learning that Kelly was shackled during an initial portion of the jury selection process.[5] Second, Kelly contends that his trial counsel was constitutionally ineffective because he failed to properly impeach several of the State's witnesses, namely Messrs. Flynn and Birlew,

---

[4] Kelly did not appeal the denial of his claim that trial counsel was ineffective in failing to secure witnesses to prove Mr. Flynn's alleged prior burglary conviction.

[5] Kelly's first ground includes some broad language that could be construed as a direct constitutional claim (as opposed to an ineffective assistance of counsel claim) based on the shackling. Because that issue was never raised at trial or on direct appeal, it has been defaulted. Kelly presented this issue in his Rule 29.15 proceedings as an ineffective assistance of counsel claim. The undersigned has considered Kelly's first ground solely as an ineffective assistance of counsel claim.

as well as Officers Weier and Brassfield.[6]  Kelly's third and fourth grounds relate to the

loss/destruction of the surveillance video depicting the break-in on February 25, 2009.  Fourth,

Kelly asserts that his pretrial attorney was ineffective because he failed to subpoena the video

surveillance before it was lost.

Respondent filed a timely response in opposition and Kelly filed a traverse.   (ECF Nos.

12 and 14).  The matter is ripe for decision.

## ANALYSIS

**I.** **Standard of Review and Analytical Framework**

    **A.** **General**

"In the habeas setting, a federal court is bound by the [Antiterrorism and Effective Death

Penalty Act of 1996 ('AEDPA')] to exercise only limited and deferential review of underlying

state court decisions."  Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003) (citing 28 U.S.C. §

2254).  Under the AEDPA, a federal court may not grant relief to a state petitioner's claim unless

the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2).

"A state court decision may be incorrect, yet still not unreasonable ...." Cole v. Roper,

623 F.3d 1183, 1187 (citing McGehee v. Norris, 588 F.3d 1185, 1193 (8th Cir. 2009)).  A federal

court may grant habeas relief "only if the state court decision is both incorrect and

unreasonable."  Id.  "The § 2254(d) standard, as amended by the [AEDPA], was intended to be

difficult to meet and only authorizes a federal habeas court to issue the writ in cases where 'there

---

[6] The details of Kelly's second ground are more clearly identified in his traverse.

is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents.'" Shelton v. Mapes, __ F.3d __, No. 15-1015, 2016 WL 1391764, at *6 (8th Cir. Apr. 8, 2016) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)). See also Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (explaining that the AEDPA standard is "difficult to meet, and even a strong case for relief does not mean the state court's contrary conclusion was unreasonable") (quotation and citation omitted).

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.'" Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412-13 (2000)). "A state court decision is an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle … but unreasonably applies that principle to the facts of the prisoner's case.'" Id.

Furthermore, "'a determination of a factual issue made by a State court shall be presumed to be correct' in a federal habeas proceeding." Cole, 623 F.3d at 1187 (quoting 28 U.S.C. § 2254(e)(1)). A state court decision involves an unreasonable determination of the facts only if the presumptively correct factual findings do not enjoy support in the record. See Ryan v. Clark, 387 F.3d 785, 790 (8th Cir. 2004).

**B.    Ineffective Assistance of Counsel**

Kelly's habeas petition includes allegations of ineffective assistance of counsel. In order to prevail on an ineffective assistance of counsel claim, a habeas petitioner must demonstrate that counsel's performance was both constitutionally deficient and that he was thereby prejudiced. See Strickland v. Washington, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's

performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of professional judgment." Bucklew, 436 F.3d at 1016 (citing Strickland, 466 U.S. at 689). Thus, "[u]nder Strickland, counsel's performance is 'measured against an objective standard of reasonableness,' and 'hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgment.'" Id. (quoting Rompilla v. Beard, 545 U.S. 374, 380-81 (2005)). Under Strickland "[p]rejudice is shown by demonstrating that counsel's errors were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." Id. (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). To be entitled to relief on a claim that trial counsel was ineffective, a petitioner must show both: (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result in the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694. In order to succeed, a petitioner must prevail on both prongs of the Strickland standard. See Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either Strickland prong is fatal to an ineffective assistance claim.").

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard of review.'" Williams, 695 F.3d at 831 (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1414 (2011)), cert. denied, Williams v. Steele, 134 S. Ct. 85 (2013). "Under [the] AEDPA, we must then give substantial deference to the state court's predictive judgment [regarding Strickland prejudice]. So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is

incorrect." Id. (citing Harrington, 562 U.S. at 101). "This is different from asking whether defense counsel's performance fell below the Strickland standard." Harrington, 562 U.S. at 101. "If the state court 'reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions,' then federal review under AEDPA is at an end." Williams, 695 F.3d at 832 (quoting Preno v. Moore, 131 S. Ct. 733, 740, 744 (2011)).

### C. Procedural Default

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Under the doctrine of procedural default, a federal habeas court may not review claims where "the prisoner had failed to meet a state procedural requirement." Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply the controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotations and citation omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

A reviewing court may excuse a default in limited circumstances. Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default, or a fundamental miscarriage of justice. See

Coleman, 501 U.S. at 750; Wainwright v. Sykes, 433 U.S. 72 (1977). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). If a petitioner has not previously presented the substance of a habeas claim and has no available procedure for doing so because he has defaulted with respect to legitimate state requirements, federal courts are barred from considering such a ground for habeas relief. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc).

## II.     Analysis of Grounds Raised

### A.     Ground One – Shackling During a Portion of Voir Dire

Kelly alleges that he was shackled during a portion of the jury selection process, and that his attorney was ineffective in failing to quash the jury venire panel. For purposes of addressing Kelly's first ground, the undersigned presumes as true that: (1) Kelly was shackled at the beginning of jury selection without justification; (2) that some potential jurors were seated in a position where they may have been able to observe that Kelly was shackled; and (3) that, after becoming aware of the situation, trial counsel did not take any steps to quash the venire panel.

The Missouri Court of Appeals affirmed the denial of relief on this ground because Kelly failed to allege any actionable prejudice as a result of the shackling. The court explained that "[Kelly] stated that the restraints '*would have been visible* to anyone behind [him], including numerous members of the venire panel." (emphasis added). However, [Kelly] did not assert that any venireperson who served on the jury actually observed the restraints. Accordingly, he has not pleaded facts warranting relief." (Resp. Exh. I at 6-7)

In addressing Kelly's shackling claim, the Missouri Court of Appeals applied the correct legal standard for evaluating Kelly's ineffective assistance of counsel claims.[7] (Resp. Exh. I at 5-6) The Missouri court also correctly recognized that the Due Process Clause generally forbids the use of visible shackles during the guilt and sentencing phases of a trial, absent an essential state interest relating to restraining the specific defendant on trial. See Deck v. Missouri, 544 U.S. 622, 629-33 (2005).[8] (Resp. Exh. I at 6)

Upon review of the record, the undersigned concludes that the Missouri Court of Appeals' decision was reasonable. That court was correct in requiring Kelly to plead meaningful prejudice in the context of this ineffective assistance of counsel claim. In Steen v. Schmalenberger, 687 F.3d 1060, 1063 (8th Cir. 2012), the Eighth Circuit explained that "the Supreme Court has declined to categorize even compelled use of shackles or prison clothing as structural error that requires automatic reversal on direct review .... If there is no rule of automatic reversal on direct review for compelled use of prison attire, then we think it cannot be clearly established that the wearing of prison clothing due to ineffective assistance of counsel is automatically prejudicial ...." (discussing Deck, internal citations omitted). "Like other trial errors, an erroneous use of shackling or prison clothing occurs 'during the presentation of the case to the jury,' and thus may 'be quantitatively assessed in the context of [the] evidence presented.'" Id. at 1063-64 (quoting Arizona v. Fulminante, 499 U.S. 279, 307-08 (1991)). In Deck, the burden of proving whether a defendant was actually seen in shackles by a juror rests with the defendant. See Merrick v. Bowersox, 2015 WL 7451210, at *3 (E.D. Mo. Nov. 23,

---

[7] The Missouri Court of Appeals relied on Dickerson v. State, 269 S.W.3d 889, 892 (Mo. banc 2008). Dickerson cites and applies the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984).
[8] The Supreme Court has addressed shackling during the guilt and penalty phases of a trial, but not in the precise situation raised by Kelly – shackling during jury selection. The undersigned has considered whether this distinction matters. Cf. Glebe v. Frost, 135 S. Ct. 429, 431 (2014) (per curiam) (explaining that the Court has "repeatedly emphasized [that] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'") (citing 28 U.S.C. § 2254(d)(1)). The undersigned concludes that shackling during jury selection raises the same types of concerns that would be present during the guilt phase of a trial.

2015) (holding that the Missouri Court of Appeals correctly required a post-conviction petitioner to prove that the jury had seen him in shackles, and that bare assertions were insufficient) (citing Deck, 544 U.S. at 634).[9] Thus, the Missouri Court of Appeals could reasonably conclude that Kelly failed to allege any Strickland prejudice because he did not allege that any juror who heard his case actually saw him in shackles.

In addition to the reasons put forth by the Missouri Court of Appeals, Kelly's shackling ground also falters in view of the overwhelming evidence of guilt. The full context of Kelly's shackling matters in this regard. See Steen, 687 F.3d at 1063-64. Unlike a traditional shackling claim, the present claim does not involve shackling visible to the jury. Rather, Kelly's claim states that some, but not all, potential jurors were in a position to observe him while shackled. Had trial counsel raised the issue to the trial court, at best the court would have quashed the entire panel and started jury selection anew. Indeed, that is exactly what Kelly argued to the Missouri Court of Appeals. But this was not a close case, and there is no reason to conclude that a different panel of jurors would have resulted in a different verdict.

This Court recently addressed a similar situation. In Poe v. Wallace, 2016 WL 880392 (E.D. Mo. March 8, 2016), a habeas petitioner claimed that his attorney was ineffective for failing to object to his shackling in the presence of the jury. After the Missouri Court of Appeals denied his claim, the petitioner renewed it in a federal habeas petition. In denying the claim, our Court explained that, "[e]ven if the record had demonstrated that Petitioner was shackled during trial, and even assuming the jurors were aware of the shackles, Petitioner would be unable to

---

[9] Similarly, federal courts have repeatedly held that a juror's brief or inadvertent exposure of a shackled defendant is not inherently prejudicial, and that in such cases the defendant must affirmatively demonstrate prejudice. See Colvin v. Bowersox, 2015 WL 1189944, at *7 (E.D. Mo. March 16, 2015) (citing United States v. Robinson, 645 F.2d 616, 617 (8th Cir. 1981)); Wilson v. McCarthy, 770 F.2d 1482, 1485-86 (9th Cir. 1985); Hudson v. Milburn, 2013 WL 3802521, at *8 (E.D. Mo. July 22, 2013) (quoting United States v. Van Chase, 137 F.3d 579, 583 (8th Cir. 1998)); Alfred v. Steele, 2011 WL 3880522, at *6 (E.D. Mo. Aug. 31, 2011) (citations omitted).

demonstrate prejudice due to the overwhelming evidence of his guilt." Id. at *6 (citing Strickland, 466 U.S. at 694; Steen, 687 F.3d at 1063-64).

Like the petitioner in Poe, Kelly cannot show prejudice from his shackling claim because the overwhelming evidence of his guilt. Kelly's shackling issue occurred prior to any evidence being presented. Had Kelly's attorney timely raised this issue, perhaps the trial court would have quashed the venire panel and started the jury selection process anew. Given the volume and nature of the evidence against him, however, Kelly cannot show any likelihood that the outcome of his case would have been different with a jury selected from a different venire panel.

Kelly's first ground is denied.

### B.     Ground Two – Failure to Impeach State's Witnesses

For his second ground, Kelly alleges that his trial counsel was constitutionally ineffective because counsel failed to adequately impeach several witnesses. Between his petition and traverse, Kelly alleges that his attorney should have impeached Mr. Flynn, Mr. Birlew, and Officers Brassfield and Weier. Respondent contends that the Missouri courts' resolution of this issue was reasonable and Kelly's second ground should be denied.

In his Rule 29.15 post-conviction motion, Kelly did not raise any issues regarding the cross-examination or impeachment of Mr. Birlew or Officers Brassfield and Weier. Further, in his appeal to the Missouri Court of Appeals, Kelly only argued that his attorney was ineffective for failing to impeach Mr. Flynn regarding his deposition testimony to that he would not be charged if he cooperated with the State's prosecution of Kelly. Kelly did not appeal any issues relating to other aspects of Mr. Flynn's testimony. Therefore, Kelly has procedurally defaulted his claim that his lawyer was ineffective in failing to adequately cross-examine or impeach Mr. Birlew and Officers Weier and Brassfield. Similarly, Kelly has defaulted any claim that his

attorney should have taken additional steps to impeach Mr. Flynn regarding his alleged prior conviction. See Coleman, 501 U.S. at 729-30. Kelly has not alleged any facts that would overcome his default. Accordingly, this Court will address this ineffective assistance claim only to the extent Kelly claims his attorney should have impeached Mr. Flynn regarding an alleged cooperation agreement with the State.

In addressing Kelly's claim, the Missouri Court of Appeals noted that, trial counsel's "'[f]ailure to impeach a witness does not generally warrant relief for ineffective assistance of counsel where the facts, even if true, do not establish a defense.'" (Resp. Exh. I at 7, quoting Wren v. State, 313 S.W.3d 211, 219 (Mo. App. E.D. 2010)). The court further noted that the decision to impeach a witness is presumed to be a matter of trial strategy. Therefore, in order to prevail under Missouri law, a movant must demonstrate both (1) that counsel's decision was not a matter of trial strategy, and (2) that the impeachment suggested would have provided movant "'with a defense or would have change the outcome of the trial.'" (Id., quoting Wren, 313 S.W.3d at 219)

The Missouri Court of Appeals agreed with Kelly that Mr. Flynn testified at trial that he had no deal with the State but "testified at his deposition that the prosecutor informed him that if he cooperated, the State would not charge him." (Resp. Exh. I at 8) The court concluded, however, that Kelly could show no prejudice. In particular, the court explained that, "[e]ven if counsel had impeached Mr. Flynn with his deposition testimony, the impeachment would not have changed the outcome of trial because the record reveals extensive evidence in addition to Mr. Flynn's testimony that established [Kelly's] guilt." (Id.) For example, apart from Mr. Flynn, Mr. Birlew, the restaurant manager, testified that he viewed the security video footage associated with the robbery and identified Kelly. Similarly, Officer Weier also observed the

video and testified that he was able to recognize Kelly's features to be the same as the features of the person he observed in the video.  (See id. at 8-9)[10]

The Missouri Court of Appeals applied the correct legal standard to Kelly's ineffective assistance of counsel claim.  The record in this matter supports that court's conclusion that Kelly did not show any prejudice from his attorney's failure impeach Mr. Flynn's testimony with the prior statement from his deposition.  As such, the Missouri Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law.

Kelly's second ground is denied.

### C.    Ground Three - Loss of Surveillance Video – Access to Evidence Violation

Kelly's third ground involves the unavailability of the surveillance video.  In this federal habeas petition, Kelly has characterized his third ground using a variety of terms, including an "Access-to-Evidence Violation," a "XIV Amendment Violation," and a "best evidence" rule violation.  (ECF No. 1)  In his Traverse, Kelly argues that the police acted in bad faith when they failed to obtain a copy of the video.  Kelly contends that the police knew the video would ruin the case against him.  (ECF No. 12 at 10)  Kelly argues, therefore, that the lack of video evidence deprived him of his rights under the Confrontation Clause.  (Id. at 11)

Respondent contends that Kelly procedurally defaulted his third ground.  (ECF No. 14 at 11)  Respondent interprets Kelly's third ground rather narrowly, with a focus on Kelly's claim that the trial court violated the "best evidence rule."  (Id. at 11-12)  Respondent further contends that, even if Kelly had not defaulted this ground, it is not cognizable.

The Court does not agree with Respondent that Kelly's third ground has been defaulted in its entirety.  Prior to trial Kelly unsuccessfully moved to dismiss the case due to the intentional

---

[10] Mr. Birlew, Officer Weier, and Officer Brassfield each testified that they observed a person in the video who exited the back of the restaurant, approached the victim's car, reach into it, and remove something from it.  (See Resp. Exh. A at 51, 62-63, 66)

destruction of exculpatory evidence. (See Resp. Exh. A at 4-5 and Exh. C at 15) Kelly included

that issue in his direct appeal. In particular, Kelly argued that his due process rights were

violated and the "trial court abused its discretion in denying his motion to dismiss for intentional

destruction of exculpatory evidence based on the destruction of the surveillance footage." (Resp.

Exh. E at 12; see also Resp. Exh. C at 11) Kelly argued, in the alternative, that the trial court

erred in denying his motion to exclude any testimony that the State's witnesses viewed the video

evidence because such testimony violated the best evidence rule. (Id.)

The Missouri Court of Appeals affirmed the trial court's denial of Kelly's motion to

dismiss. The Missouri Court of Appeals explained that

> [a] defendant's due process rights are violated whenever the State destroys
> materially exculpatory evidence. Illinois v. Fisher, 540 U.S. 544, 547 (2004). For
> evidence to qualify as "materially exculpatory," "the evidence must both possess
> an exculpatory value that was apparent before the evidence was destroyed, and be
> of such a nature that the defendant would be unable to obtain comparable
> evidence by other reasonable means." California v. Trombetta, 467 U.S. 479, 489
> (1984). "If the evidence fails to meet this two-pronged test, then the evidence is,
> at most, only 'potentially useful,' and a showing of bad faith is necessary to
> substantiate a due process claim based on the State's destruction of evidence."
> Cox, 328 S.W.3d at 362 (quoting Fisher, 540 U.S. at 548).

> [Kelly] essentially argues that the surveillance video was "materially exculpatory"
> because its exculpatory value was apparent before it was destroyed. He asserts
> that "[t]he value was that the nighttime darkness prevented either [Officer Weier
> or Officer Brassfield] from seeing the thief's face well enough to tell who it was."
> [Kelly's] assertion is contradicted by the record.

(Resp. Exh. E at 13)

With the foregoing principles and premises in mind, the court noted that Officer Weier

testified that, after he viewed the video and observed Kelly, Kelly's features matched those of

the person in the video. (Id. at 14) Similarly, Officer Brassfield testified that the video was of

sufficient quality that someone who knew Kelly would be able to identify him from the video.

(Id.) Indeed, Mr. Birlew, Kelly's boss at the restaurant viewed the video and positively

identified Kelly as the person in the video. Thus, according to the Missouri Court of Appeals, Kelly failed to show the exculpatory value of the video was apparent before it was destroyed.

The Missouri Court of Appeals further concluded that, even if the video footage had been useful to Kelly's defense, Kelly had failed to "demonstrate, or even allege, bad faith on the part of the State." (Resp. Exh. E at 14) Indeed, the record in this matter showed that Officer Weier made several attempts to obtain the tape. "Accordingly, [the Missouri Court of Appeals held] that the trial court did not abuse its discretion in denying [Kelly's] motion to dismiss." (Id.)

The Missouri Court of Appeals did not address Kelly's argument that the admission of testimony regarding the video violated the best evidence rule. The court concluded that Kelly waived this issue when he failed to object on that basis at trial. (Resp. Exh. E at 14-15) The court declined to review the alleged best evidence rule violation under the plain error standard. (Id. at 15)

The undersigned concludes that the Missouri courts' factual determinations enjoy support in the record. Kelly has not demonstrated the apparent exculpatory value of the video. Indeed, the record in this case suggests the opposite – the video was incriminating in nature. The record also clearly indicates that the police requested a copy of the video and that a third party, and not the police, caused the loss of the evidence. Accordingly, the Missouri courts' determinations are entitled to a presumption of correctness, and Kelly has not identified facts to undermine that presumption. See 28 U.S.C. § 2254(e)(1); Cole, 623 F.3d at 1187; Ryan, 387 F.3d at 790. Moreover, the Missouri Court of Appeals applied the correct legal standards to Kelly's video evidence claim, and its decision was not contrary to or an unreasonable application of clearly established federal law.[11]

_____

[11] Because Kelly failed to preserve his best evidence rule argument, that argument has been procedurally defaulted. Even if the Missouri Court of Appeals had reviewed the issue for plain error, such review would not have

Kelly's third ground is denied.

## D.     Ground Four – Counsel's Failure to Subpoena Surveillance Video

Kelly's fourth ground is related to his third ground.  For his fourth ground, Kelly alleges that his pretrial counsel was ineffective because counsel failed to secure the video evidence prior to its destruction.  Kelly also argues that his trial counsel "failed to file proper motions, raise relevant questions/claims, [and] object to issues [at] trial …."  (ECF No. 1 at 10)[12]  Respondent contends, in substance, to the extent Kelly raised this issue in his Rule 29.15 motion and appeal, the Missouri courts properly denied the claim and those court determinations are entitled to deference under the AEDPA.  (ECF No. 14 at 13-16)

Kelly raised the same contentions contained in Ground Four in his Rule 29.15 motion.  In his appeal from the denial of his Rule 29.15 motion, however, Kelly argued only that his *pretrial* counsel was ineffective in failing to secure the video; Kelly did not persist in his contention that *trial* counsel had been ineffective in failing to file proper motions regarding the video.  Thus, to the extent Kelly attempts to argue herein that his trial attorney was ineffective in addressing the loss of the video evidence, that argument has been procedurally defaulted.[13]  Further, in his Traverse in this matter, Kelly focused on the conduct of his *pretrial* counsel, not trial counsel.  Accordingly, the undersigned has considered Kelly's fourth ground only as to the limited issue

---

cured the default.  See Clark v. Bertsch, 780 F.3d 873, 876-77 (2015).  Finally, Respondent is correct in noting that an alleged violation of the best evidence rule would not be cognizable in this federal habeas matter.  See, e.g., Middleton v. Roper, 498 F.3d 812, 820 (8th Cir. 2007) ("[H]abeas review does not lie to correct alleged errors of state law.") (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991)).  See also Armstrong v. Hobbs, 698 F.3d 1063, 1067-68 (8th Cir. 2012) (explaining that "the inquiry under AEDPA is whether a state court decision is contrary to, or an unreasonable application of, clearly established federal law, not whether the state court incorrectly applied state law") (citing Middleton, 498 F.3d at 820).

[12] The record indicates that, upon his arrest but before his indictment, Kelly was represented by a different attorney than the attorney who ultimately defended him at trial.  The record suggests that, by the time Kelly's trial counsel became involved, the video evidence had been destroyed.

[13] As discussed above, the record clearly indicates that Kelly's attorney attempted to have the case dismissed on the basis of the destruction of the video evidence.  He was unsuccessful.  (Resp. Exh. A at 4-5)  Thus, even if Kelly had not defaulted the issue, Kelly would not likely succeed on a claim that his trial attorney was ineffective for failing to address the loss of the video evidence.

of whether Kelly's pretrial counsel was ineffective in failing to secure a copy of the surveillance video prior to it being taped over.

The Missouri Court of Appeals rejected Kelly's claim that his pretrial counsel was ineffective with respect to obtaining a copy of the surveillance video. The court found that Kelly failed to show both constitutionally deficient representation and prejudice. Regarding pretrial counsel's performance, the Missouri Court of Appeals explained that Kelly "failed to plead facts demonstrating that a reasonable investigation would have resulted in obtaining the video." (Resp. Exh. I at 9) Although Kelly allegedly advised his attorney of the video's existence prior to its destruction, he failed to "plead that counsel could have obtained the video prior to its destruction with reasonable investigation." (Id.)

More importantly, perhaps, the Missouri Court of Appeals concluded that the record refuted any claim that the video was helpful to Kelly's position. (Resp. Exh. I at 10) As such, Kelly could not show any <u>Strickland</u> prejudice from his attorney's alleged failure to secure the video prior to its destruction. In this regard, the Missouri Court of Appeals recounted the evidence against Kelly. For example, Messrs. Flynn and Birlew both identified Kelly as the person observed in the video taking something from the victim's car. "Mr. Birlew stated that 'no one else working [at the restaurant] … even remotely matched [Kelly's] description.' Mr. Birlew testified that he could not see [Kelly's] face clearly in the video but he 'could see it well enough to recognize who he was.'" (Id.) Officer Weier testified that the person in the video had the same features as Kelly. (<u>See</u> id.)

Additionally, the case against Kelly did not hinge entirely on the identification testimony flowing from the surveillance video. There has never been a dispute that the laptop and iPod were stolen from the victim's car, in the restaurant's parking lot, on February 25, 2009. Mr.

Flynn testified that he and Kelly were working together on February 25, 2009, and that he bought the laptop and iPod from Kelly. (See Resp. Exh I at 2) After learning that the items were stolen, Mr. Flynn reported the situation to supervisor – Mr. Birlew.

Having reviewed the record in this matter, the undersigned concludes that the Missouri courts' factual determinations enjoy support in the record. Accordingly, such determinations are entitled to a presumption of correctness and Kelly has not identified facts to undermine that presumption. See 28 U.S.C. § 2254(e)(1); Cole, 623 F.3d at 1187; Ryan, 387 F.3d at 790. Moreover, the Missouri Court of Appeals applied the correct legal standards to Kelly's video evidence claim, and its decision was not contrary to or an unreasonable application of clearly established federal law.

Kelly's fourth ground is denied.

## CONCLUSION

This Court concludes Kelly is not entitled to federal habeas relief on any ground presented in his § 2254 petition. Kelly has not satisfied his burden of showing that his state court proceedings were contrary to, or involved an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts presented in those proceedings. See 28 U.S.C. § 2254(d).

Although Kelly did not request an evidentiary hearing, such a hearing would not be warranted because the existing "record already contains all the facts necessary to resolve [Kelly's] claim[s]." Johnston v. Luebbers, 288 F.3d 1048, 1058-60 (8th Cir. 2002) (explaining that habeas petitioners are entitled to evidentiary hearings only under narrow circumstances). See also 28 U.S.C. § 2254(e)(2).

Finally, Kelly has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). See also Miller-El v. Cockrell, 537 U.S. 322, 337 (2003). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of Keith Kelly, a/k/a Abdul Islam, for habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not be issued by this Court.

A separate Judgment will be issued forthwith.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this _ 27th _ day of _ May _, 2016